IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| MONICA Y. PETERS-CLARK, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> ANGELINA COLLEGE, § <br> § <br> Defendant. § | § <br> § <br> § <br> § CIVIL ACTION NO. 9:20-CV-00031 <br> § JUDGE MICHAEL J. TRUNCALE <br> § <br> § <br> § <br> § <br> § |

## ORDER ADOPTING REPORT AND RECOMMENDATION

This case is referred to Magistrate Judge Zack Hawthorn for pretrial management under a standing order. Pending before the Court is Defendant Angelina College's *Motion for Summary Judgment*. [Dkt. 25]. On November 4, 2021, Judge Hawthorn issued his Report and Recommendation in which he recommended granting the College's motion. [Dkt. 34]. On November 19, 2021, *pro-se* Plaintiff Dr. Monica Peters-Clark filed her *Objections to the Magistrate Judge's Report and Recommendation*. [Dkt. 37]; *see* FED. R. CIV. P. 72(b)(2).

A party who files timely, written objections to a magistrate judge's report and recommendation is entitled to a *de novo* determination of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2)-(3). The Court has conducted a *de novo* review of the magistrate judge's report and recommendation and has carefully considered Dr. Peters-Clark's objections. The Court finds that the magistrate judge's findings and conclusions of law are correct, and that Dr. Peters-Clark's objections are without merit.

### I. Objection 1: Race Discrimination Based on the College Denying Dr. Peters-Clark's Title-Change Request

Dr. Peters-Clark first objects to Judge Hawthorn's decision that she could not establish a claim for race discrimination based on the College's failure to change her title from "Coordinator" to "Director." [Dkt. 37 at 1-5]. Judge Hawthorn found that Dr. Peters-Clark could not establish three of the four elements of *prima facie* race discrimination: the plaintiff was qualified for the position she was seeking, suffered an adverse employment action, and was treated less favorably than a similarly situated employee outside of her protected group. [Dkt. 34 at 13-14]; *see Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

First, Judge Hawthorn correctly found that Dr. Peters-Clark was not qualified to be a Director. He noted that she did not have authority to supervise employees or make independent decisions, two required elements of Director-level work. [Dkt. 34 at 13; 25-2 at 4]. Dr. Peters-Clark has provided some evidence that, in reality, Directors did not always supervise others. Dr. Casparis, one of Dr. Peters-Clark's supervisors, admitted that a white man named Philip Johnson "talked to superintendents all the time," but did not technically supervise anyone. [Dkt. 37 at 58]. Further, Dr. Casparis admitted that the College made Johnson a Director not because he supervised anyone, but because the superintendents would not listen to him if he wasn't a director. *Id*. In any event, Dr. Peters-Clark argues that she did in fact supervise others because her resume indicates that she once "managed the data collection efforts of 42 lead instructors and program coordinators." *See* [Dkt. 26-2 at 8].

Even if the above amounts to more than a "scintilla of evidence" and permits a jury to reasonably find that Dr. Peters-Clark supervised others, she still has not shown that she had ultimate decision-making authority, the other stated element of Director-level work. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); s*ee* [Dkt. 25-2 at 4]. She broadly claims that

"there is sufficient evidence in the record to show that [she] was performing director-level work," but the Court cannot find any. [Dkt. 37 at 3]. Her qualifications are contained in several documents—her resume, performance evaluations, letters of recommendation, and more. None of them, though, clearly indicate that she had "ultimate decision-making authority." See [Dkt. 25-2 at 4]. They contain a laundry list of experience and accolades, but "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Outley*, 840 F.3d at 217 n.8 (citing *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)). Because Dr. Peters-Clark has not established that she had ultimate decision-making authority, she has not shown that she was qualified for the position she was seeking.

Second, Judge Hawthorn correctly found that Dr. Peters-Clark did not suffer an adverse employment action. To show an adverse employment action under a failure-to-promote theory, the employer must have either "(a) hired a person outside of the plaintiff's protected class, or (b) continued to seek applicants with the plaintiff's qualifications." *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 406 (5th Cir. 2021). Dr. Peters-Clark states that she had two job titles when she was fired—"Coordinator of Institutional Effectiveness and Research" and "Coordinator of Quality Enhancement and Innovation." [Dkt. 37 at 3]. It is undisputed that the College did not seek out or hire anyone to be the "Director of Institutional Effectiveness and Research" or "Director of Quality Enhancement and Innovation." Instead, the College entirely eliminated Dr. Peters-Clark's position to create a new position called Assistant Vice President of Academic Affairs. [Dkt. 25-2 at 4]. But Dr. Peters-Clark claims that this new position absorbed her old job duties, so, for all intents and purposes, the College "hired a person outside of [her] protected class" when it filled the position with Dr. Stacy Pfluger, a white female. [Dkt. 37 at 3-4]; *Johnson*, 7 F.4th at 406.

3

Dr. Peters-Clark has not shown that the new Assistant VP position was, in effect, the "Director" position she was seeking. Dr. Casparis's email announcing the Assistant VP position stated that "various personnel, *including* the Assistant Vice President" would be absorbing the duties of Dr. Peters-Clark's former job. [Dkt. 26-7 at 16] (emphasis added). This suggests the Assistant VP position was only partially constructed from Dr. Peters-Clark's former duties. And the job posting included twenty essential duties; Dr. Peters-Clark has not addressed how many of these, if any, matched her former duties. *Id*. at 17. So, since the new Assistant VP position wasn't, in truth, a new version of Dr. Peters-Clark's old job, she cannot show that the College either hired a person outside of her protected class or continued to seek applicants with her qualifications. She therefore did not suffer an adverse employment action when the College denied her title-change request. *Johnson*, 7 F.4th at 406.

Third, Judge Hawthorn correctly found that the College did not treat a similarly situated employee outside of Dr. Peters-Clark's protected group more favorably. Dr. Peters-Clark claims that the College treated Dr. Pfluger more favorably. [Dkt. 37 at 5]. Dr. Peters-Clark must show that she and Dr. Pfluger held the "same job" or the "same job responsibilities" and that they either "share[d] the same supervisor" or had their "employment status determined by the same person." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). They neither held the same job nor the same job responsibilities. Dr. Peters-Clark was the Coordinator of Quality Enhancement and Innovation, and Dr. Pfluger was the Associate Dean of Science and Mathematics. [Dkt. 26-7 at 26; 26-6 at 4]. There is no evidence that these two positions held the same responsibilities. Dr. Peters-Clark attempts to conflate the two positions by stating that her "role in institutional effectiveness and assessment was diminished through her reassignment, and Dr. Casparis was assigning tasks to Dr. Pfluger in these areas." [Dkt. 37 at 5]. Even if this

4

statement could allow a reasonable juror to conclude that the two positions had the same responsibilities, she provides no evidence to support her claim. *Id*. Accordingly, because she and Dr. Pfluger neither held the same job nor job responsibilities, Dr. Peters-Clark has not identified a similarly situated, non-black employee that the College treated more favorably.

In sum, Judge Hawthorn correctly found that Dr. Peters-Clark failed to establish three of the four *prima facie* elements of race discrimination based on the College's decision not to change her title from "Coordinator" to "Director." Therefore, the Court overrules Dr. Peters-Clark's first objection.

### II.      Objection 2: Race Discrimination Based on Dr. Peters-Clark's Termination

#### A.  Traditional *Prima Facie* Case

Dr. Peters-Clark next objects to Judge Hawthorn's decision that she failed to establish a claim for race discrimination based on her termination. [Dkt. 37 at 6-8]. Judge Hawthorn found that Dr. Peters-Clark could not establish the fourth traditional element of *prima facie* race discrimination: the plaintiff was treated less favorably than a similarly situated employee outside of her protected group. [Dkt. 34 at 16-17]. Dr. Peters-Clark contends that the College treated Pfluger more favorably. [Dkt. 37 at 6]. But for the same reasons as above, she and Dr. Pfluger were not "similarly situated." *See Alkhawaldeh*, 851 F.3d at 426. Accordingly, Judge Hawthorn correctly found that Dr. Peters-Clark failed to establish the traditional elements of *prima facie* race discrimination.

#### B.  Reduction-in-Force *Prima Facie* Case

Judge Hawthorn also found that Dr. Peters-Clark failed to establish the second and fourth reduction-in-force *prima facie* elements: the plaintiff was qualified to assume another position at the time of her discharge, and the employer either intended to discriminate in reaching the adverse

employment action, or others who were not members of the protected class remained in similar positions. [Dkt. 34 at 17]; *Ortiz v. Shaw Grp., Inc.*, 250 F. App'x 603, 606 (5th Cir. 2007).

Judge Hawthorn correctly found that Dr. Peters-Clark failed to show that she was qualified for the newly created Assistant VP position. Dr. Peters-Clark claims that she was qualified for the new position because it absorbed some of her old duties. [Dkt. 37 at 7]. But as discussed with her first objection, the new position was only partially constructed from Dr. Peters-Clark's former duties. She also claims she was qualified for it because Dr. Simon—her other supervisor—once supported her pursuing a similar job at a different college. *Id*. The other job's responsibilities only somewhat matched those of the Assistant VP position, so this comparison is not useful. *Compare* [Dkt. 26-7 at 14], *with* [Dkt. 26-7 at 17]. And more importantly, this argument overlooks that Dr. Peters-Clark did not meet the new job's qualifications: she did not possess a doctoral degree in "community college or higher education administration, curriculum design, or curriculum and instruction." *See* [Dkt. 26-7 at 17]. She argues that she possessed the equivalent of those qualifications because she worked in curriculum development while employed at the College. [Dkt. 37 at 7]. But the College decided that it wanted the new Assistant VP to possess that specific doctoral degree, and "Title VII is not a vehicle 'for judicial second-guessing of busines decisions.'" *Easterling v. Tensas Parish Sch. Bd.*, 682 F. App'x 318, 323 (5th Cir. 2017) (citing *Walton v. Bisco Indus., Inc.*, 119 F.3d 368, 372 (5th Cir. 1997)). Accordingly, Dr. Peters-Clark was not qualified to assume the newly created Assistant VP position at the time of her discharge.

In her objections, however, Dr. Peters-Clark presents evidence for the first time that she was qualified to assume an unfilled "Institutional Research" position. [Dkt. 37 at 6]. The position was unfilled as of August of 2017, the month before she was fired. [Dkt. 26-6 at 4]. Its title and her resume suggest that she was qualified for it: her previous title was Coordinator of Institutional

Effectiveness and Research, and she held a Level 1 Certificate from the Texas Association for Institutional Research. [Dkt. 26-2 at 7-8]. Viewed in the light most favorable to Dr. Peters-Clark, she has established that she was qualified to assume another position at the time of her discharge.

Regardless, though, Judge Hawthorn correctly found that the College neither intended to discriminate when it terminated Dr. Peters-Clark nor allowed non-black employees to remain in similar positions. Dr. Peters-Clark does not present new arguments to contest Judge Hawthorn's finding. She simply rehashes her argument that the circumstances of another employee's termination reveal discriminatory motive. *Compare* [Dkt. 37 at 7-8], *with* [Dkt. 26 at 20-21]. Judge Hawthorn has adequately addressed this argument. Accordingly, he correctly found that Dr. Peters-Clark failed to establish every reduction-in-force *prima facie* element.

C. <u>Legitimate, Nondiscriminatory Reason</u>

For good measure, Judge Hawthorn also correctly found that the College proffered a legitimate, nondiscriminatory reason for its decision to terminate Dr. Peters-Clark: the College reorganized to focus on areas like distance education and dual credit. *See* [Dkt. 34 at 17; 25-3 at 4]. Dr. Peters-Clark suggests that the College decided to eliminate her role after she complained about unfair treatment, not over a year-long process as indicated in Dr. Casparis's email announcing the reorganization. [Dkt. 37 at 8]. Here, Dr. Peters-Clark attempts to spotlight an inconsistency where there isn't one. Dr. Casparis sent the email on September 26, 2017, where she announced that two positions had been eliminated "[a]fter engaging in a year-long process of analyzing and considering the college's goals." [Dkt. 26-7 at 16]. She testified that she "began the process of analyzing and considering the college's goals" when she started working at the College a year earlier and that it "became clear" by late September 2017 that the department needed to be reorganized. [Dkt. 25-3 at 4]. Even if there were an inconsistency here, once again, "Title

7

VII is not a vehicle 'for judicial second-guessing of business decisions.'" *Easterling*, 682 F. App'x at 323. Whether the College decided to reorganize in late 2016 or late 2017 is irrelevant to whether it was a legitimate, nondiscriminatory reason.

    D.  <u>Pretext</u>

Judge Hawthorn also correctly found that the College's proffered reason was not a pretext for discrimination. [Dkt. 34 at 18-20]. While Judge Hawthorn noted minor inconsistencies in the circumstances surrounding the reorganization, he correctly found that they were not enough to overcome Dr. Peters-Clark's lack of *prima facie* case. *See* [Dkt. 34 at 20]. Dr. Peters-Clark's objections merely restate that Judge Hawthorn noted those minor inconsistencies. [Dkt. 37 at 7-8]. She therefore fails to show that the reorganization was a pretext for discrimination.

In sum, Judge Hawthorn correctly found that Dr. Peters-Clark failed to establish the fourth traditional element and the fourth reduction-in-force element of *prima facie* race discrimination based on Dr. Peters-Clark's termination. He also correctly found that the College proffered a legitimate, nondiscriminatory reason for its actions that was not a pretext for discrimination. Therefore, the Court overrules Dr. Peters-Clark's second objection.

    **III.**    <u>**Objection 3: Retaliation Based on Dr. Peters-Clark's Termination**</u>

Finally, Dr. Peters-Clark objects to Judge Hawthorn's decision that the College did not retaliate against her for engaging in protected activity. See [Dkt. 34 at 21-23]. In her objections, Dr. Peters-Clark offers new evidence of allegedly protected activity: a secretly recorded meeting she had with Dr. Casparis two-and-a-half weeks before she was terminated. [Dkt. 37 at 57-73]. The recording reveals that Dr. Peters-Clark complained to Dr. Casparis: "Goalposts keep being moved . . . I'm seeing, observing different things that are happening . . . that is not fair to me . . . I'm a black female professional . . . so to be talked to the way I am at times, it's very offensive." [Dkt. 37 at 62].

To establish a *prima facie* case of retaliation, Dr. Peters-Clark must show: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 618 (5th Cir. 2020). "[A] plaintiff engages in protected activity when she complains of an employment practice that she 'reasonably believes' violates Title VII." *Id.* at 619. Dr. Peters-Clark's statements are relatively weak, but viewed in the light most favorable to her, the Court finds that she "reasonably believed" she was opposing activity made unlawful by Title VII. The Court will therefore assume she engaged in protected activity during the recorded meeting. Further, her termination was undoubtedly an adverse employment action. So, she must show a causal link between her comments and her termination.

Dr. Peters-Clark attempts to show a causal link by noting that her termination was unforeseen and occurred quickly after the meeting. [Dkt. 37 at 9]. As discussed above, her termination was not entirely unforeseen: Dr. Casparis testified that she began the process of analyzing the college's goals a year earlier, and she decided by late September 2017 that the department needed to be reorganized. *See* [Dkt. 25-3 at 4]. As for the short time between the meeting and Dr. Peters-Clark's termination, "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action" is sufficient evidence of causality if the temporal proximity is "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, two-and-a-half weeks qualifies as "very close." *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 949 (5th Cir. 2015) (finding six-and-a-half weeks to be sufficiently close). Accordingly, Dr. Peters-Clark has established a *prima facie* case of retaliation based on her termination.

The burden then shifts to the College to proffer a legitimate, nonretaliatory reason for the termination.  As already discussed, the College has done this: it explained that it reorganized to focus on areas like distance education and dual credit.  *See* [Dkt. 34 at 17; 25-3 at 4].  Since the Court has already dispensed with Dr. Peters-Clark's argument that the timing of the reorganization was inconsistent, she has failed to show that the reason was anything but legitimate and nonretaliatory.  And even if she had met this burden, she also has not shown that the reorganization was a pretext for discrimination.

Accordingly, Judge Hawthorn correctly found that Dr. Peters-Clark failed to establish a claim for retaliation.  The Court overrules her third objection.

## IV.    Conclusion

It is therefore ORDERED that Plaintiff Dr. Monica Peters-Clark's *Objections to the Magistrate Judge's Report and Recommendation* [Dkt. 37] are OVERRULED.  Judge Hawthorn's Report and Recommendation [Dkt. 34] is ACCEPTED, and Defendant Angelina College's *Motion for Summary Judgment* [Dkt. 25] is GRANTED.  The Court will enter a Final Judgment separately.

**SIGNED this 10th day of March, 2022.**

_____
Michael J. Truncale
United States District Judge